**W. Gayden WHITE, Plaintiff,**

v.

**ALL AMERICA CABLE & RADIO, INC., Defendant.**

Civ. No. 81–2279 HL.

United States District Court, D. Puerto Rico.

Feb. 13, 1986.

Charles A. Cordero, San Juan, P.R., Heber Lugo, Santurce, P.R., for W. Gayden White.

Radames A. Torruella and Edwin J. Guillot, Jr., McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P.R., for All America Cable and Radio Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff, W. Gayden White, who claims to be a California citizen, filed this action against defendant, All America Cable & Radio, Inc. ("All America"), a Delaware corporation with its principal place of business in Puerto Rico, for constructive discharge under 21 LPRA 185a et seq., and compensation for unpaid overtime hours, accrued vacation time, severance pay and moving expenses. By Opinion and Order dated October 1, 1985, we denied All America's 12(b)(1) motion to dismiss for lack of diversity jurisdiction, finding that plaintiff had established domicile in California and that jurisdiction was proper under 28 U.S.C. 1332(a). Defendant has motioned the Court to reconsider this Opinion and Order. Defendant's motion is granted.

Upon examination of documents recently submitted by defendant, together with a reexamination of the evidence previously before the Court, we find that plaintiff has failed to meet his burden of establishing domicile in California and that the Court is without jurisdiction under 28 U.S.C. 1332.

This case presents a unique jurisdictional issue. The action was filed on November 25, 1981. At the time of filing plaintiff had abandoned his domicile in Puerto Rico. He was living temporarily in Caracas, Venezuela, for job training, but claims to have established domicile in California. Plaintiff was physically present in California for only a day and a half prior to accepting his new job. In our Opinion and Order of October 1, 1985, we found plaintiff had established the requisite intent to reside in California for an indefinite period after his training in Caracas, and, given the peculiar circumstances of the case, the physical presence in California for only a day and a half was sufficient to meet the test to establish a new domicile. Defendant's Motion for Reconsideration asks the Court to reexamine whether plaintiff can establish by a preponderance of the evidence that he had the intent to reside indefinitely in California at the *time* of filing the complaint.

We summarize only those facts which determine the outcome of this issue.[1] In 1980 plaintiff had become dissatisfied with his job at defendant company, All America. In this same year plaintiff was in Caracas, Venezuela where he was approached by a former acquaintance, Mr. Cherrie, a vice president of the Bank of America stationed in Venezuela. According to Mr. White's statements made at his deposition he met with Mr. Cherrie to discuss "problems going on in the Virgin Islands," presumably concerning security since this is Mr. White's field of expertise. At their meeting in Caracas, Mr. Cherrie mentioned that there may be a security job opening with the Bank of America.

In February, 1981, plaintiff met to discuss job possibilities with Mr. Cherrie in Caracas and with other Bank of America officers in their headquarters in San Francisco.[2] In April, 1981, Bank of America telephoned plaintiff in Puerto Rico to offer him a position. By the terms of this job plaintiff was sent temporarily to Caracas for training in international banking security. In accordance with bank procedure, while plaintiff was in Caracas he was considered a domestic of California working out of the main office in San Francisco.

Upon accepting the position plaintiff moved in April, 1981, directly from Puerto Rico to Caracas. He placed for sale all of his property in Puerto Rico and his car, and closed his banking and credit accounts. Some of his belongings were transferred with him to Caracas, while the remaining property was stored in Puerto Rico until he was permanently placed by Bank of America. There is no evidence in the record that plaintiff had the intention of returning to Puerto Rico when he left for Caracas.

Plaintiff remained in Caracas until 1983 when he was transferred to California. He continues to reside in California.

The federal court is a court of limited jurisdiction and those statutes granting the court jurisdiction are to be strictly construed. *See Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Healy v. Ratta*, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934). An attack on the court's jurisdiction may not be waived. The issue of a court's jurisdiction may be raised at any time, even on appeal, *see Velez v. Crown Life Ins. Co.*, 599 F.2d 471 (1st Cir.1979), and may be raised by either party or the court itself. *Basso v. Utah Power and Light Co.*, 495 F.2d 906 (10th Cir.1974) (citing *Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987 (1939). It goes without saying that without proper jurisdiction the federal court has no author-

---

**1.** For a more complete rendition of the facts, see October 1, 1985 Opinion and Order.

**2.** The Court mistakenly stated in the prior Opinion and Order that plaintiff travelled to San Francisco in April, 1981 to discuss the job.

ity to decide the merits of a case. *See* F.R.C.P. 12(h)(3).

■ The federal court has diversity jurisdiction under 28 U.S.C. sect. 1332 of claims in excess of $10,000 when complete diversity of citizenship exists between the parties. Whenever a proper challenge to plaintiff's allegations of diversity jurisdiction is made, plaintiff has the burden of supporting the allegations by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reyes v. Eastern Airlines, Inc.*, 528 F.Supp. 765 (D.P.R.1981). Plaintiff must establish that the court had jurisdiction as of the date the complaint was filed. *Janzen v. Goos*, 302 F.2d 421, 424 (8th Cir.1962); *Lefkowitz v. Lider*, 443 F.Supp. 352, 355 (D.Mass.1978).

■ A party's citizenship for diversity purposes is the place of domicile. *Hawes v. Club Ecuestre el Comandante*, 598 F.2d 698, 702 (1st Cir.1979). Two elements are necessary to establish domicile: 1) physical presence in the claimed domicile, and 2) an intent to remain there indefinitely. *Sun Printing & Publishing Assn. v. Edwards*, 194 U.S. 377, 383, 24 S.Ct. 696, 698, 48 L.Ed. 1027 (1904); *Miller Press Factory, Inc. v. Douglas*, 385 F.Supp. 874 (D.P.R. 1974). Though no minimum period of physical presence is required, *Hawes, supra* at 701, both elements must exist simultaneously to establish domicile; one element alone is insufficient. *Sun Printing, supra; see also, Honneus v. Donovan*, 93 F.R.D. 433, 434, fn. 1 (D.Mass.1982); Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2nd.*, sect. 3613. Once the elements are met a new domicile is established instantaneously.

■ A plaintiff who claims to have changed his domicile in favor of a new one has a particularly heavy burden of establishing citizenship, since the law presumes that a domicile once established continues unless and until a new domicile is acquired.

*Anderson v. Watt*, 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1078 (1891); *Holmes v. Sopuch*, 639 F.2d 431 (8th Cir.1981); *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954 (5th Cir.1966); Wright, Miller & Cooper, *supra*, sect. 3612.

The reason for this presumption is to solve the problem of locating an individual who has clearly abandoned his present domicile but either has not arrived at a new one or has arrived without formulating the intent to stay. Wright, Miller & Cooper, *supra*, sect. 3612. This presumption may also apply in the case of an American citizen living abroad temporarily.

■ In our Opinion and Order of October 1, 1985, we relied on plaintiff's statements in his affidavit of his desire to move to California and his intent to remain there indefinitely. In the affidavit plaintiff testifies that he and his wife had decided to settle in California because they liked the area, his wife had relatives there and his daughter planned to return to the state. We recognize that a party's statements of intent are self-serving and are subject to judicial skepticism when the statements are contradicted by other evidence in the record. *Korn v. Korn*, 398 F.2d 689 (3rd Cir.1968).

Upon initial consideration of plaintiff's intent to establish domicile in California we found little evidence to contradict plaintiff's assertions in his affidavit. In fact, the veracity of the statements was confirmed by subsequent events—plaintiff was transferred to California in 1983 and he has purchased property there.[3] However, with its Motion for Reconsideration defendant has submitted some new evidence of employment agreements and has encouraged the Court to look at evidence previously submitted in a new light. On reconsideration we find that plaintiff's statement of intent to be a California domiciliary at the time the complaint was filed cannot be supported.

---

**3.** The Court was aware that plaintiff cannot establish citizenship with evidence of his residence subsequent to filing the complaint, but the evidence can be considered to test sincerity of intent.

Plaintiff signed two employment agreements with Bank of America. Clause 5 of the first agreement states:

Recognizing the geographical spread of the Bank's operations, I shall hold myself available for transfer to any location to which I may be assigned.

Clause 2 of the second agreement states:

Bank reserves the right to reassign Employee to any location.

At his deposition plaintiff testified that he told Bank of America officers that the determining factor whether he would accept the position was "the numbers," or compensation, not whether they could assure him a position in California. This combined evidence raises the suspicion that plaintiff was not guaranteed a position in California by Bank of America when he moved to Caracas in 1981. It follows that plaintiff could not have formulated the requisite intent to reside in California on November 25, 1981, the date the complaint was filed.

Plaintiff attempts to refute this evidence with the argument that the employment agreements should be given little weight because they do not supersede any prior agreement between himself and Bank of America that he would be assigned a permanent position in California after training in Caracas. There is no objective evidence in the record that such an agreement was made. Plaintiff's expatriate status, working in Caracas as a California domestic, and the federal tax forms filed by Bank of America on plaintiff's behalf is the only objective evidence to support plaintiff's claim that he became a California domiciliary when he accepted the job with Bank of America in 1981. However, plaintiff's expatriate status was for the purpose of taxes and other internal Bank procedure. For the purpose of establishing citizenship (or domicile) under the diversity statute, this evidence is irrelevant; it supports neither the element of intent nor that of physical presence required to acquire a domicile.[4]

The remaining evidence of plaintiff's intent to become a California domiciliary are statements made in his affidavit. As defendants have produced evidence to raise suspicion about these statements they must be viewed with skepticism and are entitled to little weight. Plaintiff has the burden of supporting his allegations for diversity jurisdiction by a preponderance of the evidence. He has failed to meet this burden.

We find that plaintiff abandoned his domicile in Puerto Rico, but had not yet established a new domicile in California or elsewhere at the time the complaint was filed.[5] Plaintiff has failed to establish intent to reside in California by a preponderance of the evidence. Furthermore, based on the evidence as the Court now views it, even if the requisite intent existed prior to filing the complaint, plaintiff has not met the test for physical presence. His visit to California for a day and a half is de minimus and, more importantly, could not have occurred simultaneous with intent since he was not offered the job with Bank of America until after he returned to Puerto Rico. The law presumes that an established domicile, in this case Puerto Rico, continues unless and until a new domicile is established.[6] Hence, Puerto Rico contin-

4. For example, plaintiff had expatriate status as a New York domestic while he worked for ITT in Puerto Rico, yet he was a Puerto Rico domiciliary. Plaintiff admits this fact.

5. Plaintiff did not become a domiciliary of Caracas when he was living there temporarily for training. An individual does not necessarily become a domiciliary of the place they are assigned to for a fixed duration. *See Walker v. Paradise Taxicabs, Inc.,* 202 F.Supp. 469 (D.P.R. 1962). Even if plaintiff had established domicile in Caracas, diversity jurisdiction would not exist. An American citizen domiciled in a foreign country cannot sue or be sued in the federal court under the diversity statute. *Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980).

6. Plaintiff raises the argument that domicile should revert to his place of birth while he was in transit from Puerto Rico to California. *See Gregg v. La. Power & Light Co.,* 626 F.2d 1315 (5th Cir.1980). The court finds it unnecessary to address this issue. This is not a case of a person with a migratory lifestyle who has never acquired a domicile. Only in such extreme cases will the law presume the place of birth to be the domicile.

ued to be plaintiff's place of domicile at the time the complaint was filed, defeating this Court's diversity jurisdiction.[7]

For the above stated reasons, we find that this Court lacks diversity jurisdiction. The Clerk is directed to enter judgment dismissing plaintiff's complaint.

IT IS SO ORDERED.

7. This case can be analogized to *Holmes v. Sapuch, supra,* 639 F.2d 431. There, plaintiffs filed a diversity action against a Missouri defendant. Plaintiffs claim they abandoned domicile in Missouri when they moved to Ohio for a one year masters degree program at the University of Ohio. Though the court found that plaintiffs may not have intended to return to Missouri they did not establish the requisite intent to claim domicile in Ohio. Since they did not meet the requisites to establish a new domicile, their old domicile in Missouri persisted and diversity jurisdiction was defeated.